GARDNER *et al. v.* PRICE *et al.*

(In Banc. Feb. 26, 1945. Suggestion of Error Overruled April 9, 1945.)

[21 So. (2d) 1. No. 35785.]

Elbert Johnson, of Indianola, and Alexander & Alexander, of Jackson, for appellants.

834

Cooper & Thomas, of Indianola, for appellees.

838

Argued orally by **Jas. A. Alexander**, and **Elbert John-son**, for appellants, and by **Forrest G. Cooper**, for appellees.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

This action was filed in the Circuit Court of Humphreys County by Edward D. Price, alleged to be the same person as Delmo Price, and L. D. North, as plaintiffs, who are appellees here, and they will hereafter be so called, against S. W. Gardner, Sophia Gardner and Bessie Mae Gardner, as defendants, appellants here, and they will herein be so called. The suit is an action in ejectment and demanded possession of eighty acres of land in Humphreys County, Mississippi, described as the East Half of the Northeast Quarter of Section 11, Township 14 North, Range 3 West. Damages were also demanded for the use and occupation of the land.

Taxes against this land for 1930 were assessed to one C. O. Dewey, as owner, and on his failure to pay the same, the lands were sold to the State of Mississippi by the Tax Collector of Humphreys County on April 6, 1931. The lands were not redeemed from this sale. On September 22nd, 1942, the state issued a forfeited tax land patent conveying said lands to Delmo Price, one of the appellees, and being the same person as Edward D. Price. He and his wife on December 10th, 1942, by a quit claim deed conveyed a one-half undivided interest in said lands to L. D. North, the other appellee.

On February 4th, 1931, the said C. O. Dewey and Sophia Gardner and S. W. Gardner executed a trust deed

on said lands to H. T. Odom, as trustee for Citizens Bank & Trust Company, to secure the payment of a certain sum therein mentioned, which said trust deed was foreclosed on April 13th, 1932, and the land sold to Federal Intermediate Credit Bank of New Orleans, Louisiana, along with the other lands included in the trust deed. On December 19th, 1942, the Federal Intermediate Credit Bank by quit claim deed conveyed the land involved in this suit to S. W. Gardner and Sophia Gardner, two of the appellants in this appeal.

The appellants filed a plea of the general issue and the case proceeded to trial, resulting in a judgment for the appellees requiring appellants to surrender possession of the premises to appellees on a date fixed and for the value of one year's rent. From this judgment the defendants below appealed here.

There are several points raised by appellants, but it is necessary for us to consider only one of them, as in our judgment it is decisive of the case, and that point, as stated in the brief of appellants, is that "The minutes of the board of supervisors of Humphreys County for the period from July 1930 to November 1930, dealing with the assessment of said lands for taxes were not signed by the president of the board before final adjournment of the board as provided by Section 211 of the Code of 1930, Section 3678, Hemingway's 1917 Code," now Section 2886, Code 1942.

This section, as far as pertinent to the issue here, contains this provision: "The minutes of each day shall be read and signed by the president before the final adjournment of the board." The contention, in brief, made by appellants is that appellees acquired no title to the lands involved because the forfeited tax land patent from the state was void because the state had no title to convey by patent due to the fact that the sale of the land for 1930 taxes was void because of the illegality of the assessment on account of the alleged violation of the statutory requirement that the minutes be read and signed

by the president "before the final adjournment of the board."

To sustain this attack upon the validity of the proceedings of the July, 1930, meeting of the board of supervisors, being the term fixed by law for notice to the taxpayers that the tax rolls had been examined and were open for inspection, and objections to be filed with the clerk on or before the first Monday in August, 1930, the defendants offered a member of the board, the county tax assessor, and the attorney for the board, as witnesses to prove that the minutes were not signed until the August, 1930, meeting, at which meeting objections were to be heard pursuant to the notice directed to be and given by the clerk. Appellees objected to this oral evidence and their objection was sustained. For the reason now to be mentioned it is not necessary for us to decide whether the Court was correct in its ruling in this precise particular.

Appellants introduced the minutes of the board at its August meeting, which under the demonstrated practice of the board were not signed until its September meeting, and so on, containing this entry: "All minutes of the regular and continued July, 1930, meetings were read and approved." At the August meeting the notice ordered at the July meeting to be given the taxpayers were copied at length on the August minutes, and the tax rolls and its assessments attempted to be approved and made final. At the following September, 1930, term of the board the minutes contained this entry: "All minutes of the regular and continued August 1930 meeting was (sic) read and approved." This practice was followed each month by the board.

The question thus presented is, does this entry on the minutes of the board of supervisors amount to proof that the minutes of the board at its July, 1930, meeting were not signed by the president before final adjournment of the July term? And, the further question, if we hold that it does constitute such proof, would the failure of the

president of the board to sign the minutes before final adjournment invalidate the acts of the board at its July, 1930, meeting relating to tax assessments?

In our opinion it amounts to sufficient proof that the minutes of the board were not signed at the July, 1930, meeting of the board before the final adjournment thereof. If the minutes of the July meeting had been signed before the adjournment in July, they could not have been reviewed or affected by approval or disapproval at the August meeting. The signature of the president, if attached to the minutes before adjournment of the July term as provided in the statute, would have foreclosed examination of such minutes at the August meeting to determine whether or not the same should be approved. Therefore, the only reasonable inference which can be drawn from the entry, ''all minutes of the regular and continued July 1930 meetings were read and approved,'' is that the president of the board had not signed the minutes before the final adjournment of the July, 1930, meeting.

In Arthur v. Adams & Speed, 49 Miss. 404, it was pointed out that the statute, Article 14, p. 416, Code of 1857, required the minutes of each day to be read over and signed by the president, and the Court held that the omission to do so did not invalidate the proceedings. In Beck, Tax Collector, v. Allen, 58 Miss. 143, the board at its September, 1880, term agreed to the levy but adjourned without entering its order on the minutes, which was entered by the clerk before the October meeting, at which meeting the minutes were read and approved and signed by the president. The Court said: ''We entertain no doubt that the action taken at the October term made them valid from that time. The statute (Code 1871, sec. 1361) does not require that the president of the board shall sign the minutes before adjournment. . . . Moreover, this approval and signing at the next meeting would have the effect to make the order valid, as of that

term, if the order be such as the board could make at that term.''

The Revised Code of 1880 in Section 2142, dealing with this subject, does not require that the president sign the minutes before the final adjournment of the board.

The statute now in force, Section 211, Code 1930, now Section 2886, Code 1942, provides: ''It shall be the duty of the clerk of the board of supervisors to keep and preserve a complete and correct record of all the proceedings and orders of the board. He shall enter on the minutes the name of the members who attend at each meeting, and the names of those who fail to attend. He shall safely keep and preserve all records, books, and papers pertaining to his office, and deliver them to his successor when required. The minutes of each day shall be read and signed by the president before the final adjournment of the board.''

The present statute refers to minutes of each day but requires that they shall be signed before final adjournment. The legislature must be presumed to have had some reason for so changing the former statute, and the reason manifest here is it meant to avoid the decision of the Court that signing the minutes each day was directory only as to matters which could only have been disposed of at a particular meeting, and no other meeting, by making signing before final adjournment mandatory as to such matters. The statute in its present form first appeared as Section 287, Annotated Code of 1892.

Mr. Justice Griffith, speaking for the Court in Simpson County v. Burkett, 178 Miss. 44, 172 So. 329, 331, referring to irregularities in the signing of the minutes of boards of supervisors, said: ''We have determined that by reason of the seriousness of the question which we have been discussing to pretermit decision of it at this time, trusting that with what we have said there shall be such a return to obedience to the statute, section 211, that it will not hereafter be necessary to decide this far-

reaching question.'' We are now again confronted with a similar situation.

The question is whether or not the law was changed so as to make it in its present form mandatory, in other words, whether the rule now prescribed by the legislature in changing the old statute as interpreted by court decisions to be directory, was due to some purpose of the legislature, or just a juggling of words.

We have spoken further, of late, with reference to statutes dealing with minutes of courts, and the board of supervisors is a court of record, since it. is required to keep minutes of its proceedings. The statute last discussed by us in this connection is Section 750, Code 1930, now Section 1665, Code 1942, as follows: ''The minutes of the proceedings of the Supreme, circuit, chancery and county courts shall be entered by the clerk of each, respectively, in the minute-book of the court, against the next sitting of the court, if practicable, when the same shall be read in open court; and when corrected shall be signed—the minutes of the Supreme Court by the. chief justice or presiding judge, of the circuit court by the circuit judge, of the chancery court by the chancellor and of the county court by the county judge; and on the last day of the term the minutes shall be drawn up, read, and signed on the same day, or before the adjournment of the court.''

This Court held in Watson v. State, 166 Miss. 194, 146 So. 122, 126, dealing with a situation where the minutes of the court were not signed before the final adjournment of the court, that, ''In view of the mandatory provision of this statute, there is no right or authority in a presiding judge to sign the minutes of his court after the term has expired by operation of law and is in vacation.''

Applied to the case here considered, and bearing in mind the change in the statute, we are of the opinion that the requirement of the statute that the president of the board sign the minutes thereof before adjournment of the meeting, where the transactions sought to be evidenced

or affected by such minutes were had, is mandatory, and was not obeyed in the case before us. We are not to be understood as holding that those acts of the board which were had at the July, 1930, meeting would be invalid, where the board had the authority to transact them at the August, 1930, meeting, when the minutes were read, approved and signed at the August meeting. They, however, became effective by such approval and signing as of the August meeting, and from the date of the signing at the August meeting. But in the case before us, the equalization of taxes could only be initiated at the July, 1930, meeting after examination at the July, 1930, meeting, and notice to the taxpayers ordered at the July meeting to appear at the August meeting to present objection; so the transactions in connection with the taxation reflected in the minutes of the July, 1930, meeting could not be ratified at the August, 1930, meeting by failure to sign the minutes before final adjournment in July, and signing same at the August meeting. And hence such tax matters required by law to be transacted only at the July meeting could not be ratified by signing July minutes at the August meeting, thereby making them August and not July acts.

The trial court should therefore have denied relief to appellees on the situation before us as to the tax assessment, and for lack of the right to possession under a void patent. The judgment of the trial court will, therefore, be reversed and judgment rendered here for appellants.

Reversed and judgment here for appellants.

DISSENTING OPINION.

**Sydney Smith, C. J.**, delivered a dissenting opinion.

I express no opinion on the admissibility of parol or extrinsic evidence, not merely to contradict the minutes of this board of supervisors, but to show that they are

of no legal effect for the reason that they were signed by the president of the board after he had lost the power to so do. But if extrinsic evidence is admissible for that purpose, the recital in the minutes of a subsequent meeting of the board relative to whether the minutes of its prior term were signed before the adjournment of that meeting is extrinsic evidence within the meaning of the parol evidence rule, if that rule here applies.

I agree with Judge ROBERDS that if the minutes of this subsequent meeting of the board are to be considered, the recital therein that the minutes of the former meeting were read and approved does not disclose that the former minutes were not signed at the former meeting. The effect of this recital must be limited to its words and should not be enlarged by inferences therefrom that may or may not be in accord with the true facts.

PARTIALLY DISSENTING OPINION.

**Roberds, J.,** delivered a partially dissenting opinion.

The minutes of the supervisors are being attacked some thirteen years after entrance. For that time, the minutes have been, and are now, regular on the face thereof. There is no charge of fraud, or mistake, or that the minutes do not correctly set forth the action then taken by the supervisors. The oral proof to contradict them was not competent. Johnson v. Edde, 58 Miss. 664; Jones v. Williams, 62 Miss. 183; Childress v. Carley, 92 Miss. 571, 46 So. 164, 131 Am. St. Rep. 546. The recitals in the minutes entered at each subsequent monthly meeting to the effect that the former minutes were then read and approved did not, in my opinion, prove that the former minutes had not been signed by the president. The burden of so showing was on appellants. In the cases of Watson v. State, 166 Miss. 194, 146 So. 122; Williams v. State, 179 Miss. 419, 174 So. 581 and Jackson v. Gordon,

194 Miss. 268, 11 So. (2d) 901, the defects in the minutes appeared in the minutes themselves at the time they were attacked. The question of contradicting them by extrinsic proof was not involved.