SOUTHWICK, J.,
for the Court.
¶ 1. Demetrius Smith was convicted by a Panola County Circuit Court jury of capital murder. His only appellate issue is whether a knife found in a vehicle that he often drove was erroneously admitted into evidence. We conclude that there was no reversible error and affirm.
FACTS
¶ 2. Carnesha Nelson was a University of Mississippi student, having just finished her sophomore year. On May 27, 2004, *980 Nelson was attacked in her apartment. She managed to escape from the apartment and ran through her apartment complex seeking help. At around 1:00 a.m. Nelson began banging on the door of a nearby apartment. The person occupying that apartment was frightened and did not know what to do. According to the resident’s testimony, Nelson was screaming to be let into the apartment. She also begged that the police be called because somebody was chasing her. Nelson was barefoot and said that her attacker got into her apartment and raped her. Nelson said that her attacker was at her vehicle and planned to hurt her.
¶ 3. The resident opened the door but left the door chain attached. Nelson tried to get into the apartment by tugging on the chain to the point of almost stripping the screws that secured it to the door. During this brief encounter, Nelson screamed again as she saw her attacker coming towards her. Not being able to get inside the apartment, Nelson ran away. The other resident called the police. While on the phone, she heard what she testified could have been a car alarm or squealing tires. After hanging up with the emergency operator, the resident hid in the pantry of her apartment and called a family member.
¶ 4. A patrol unit located about two miles away from the apartments conducting a traffic stop responded to the telephone call. The officers arrived at the apartments in less than a minute from receiving the dispatch. Acting upon the information they had, the officers immediately began to conduct a search of the apartment complex and the surrounding area. The officers were unable to discover anything relevant. They remained unaware of Nelson’s identity and abduction.
¶ 5. In the early morning hours of May 29, Nelson’s birthday, two fishermen found her body floating in the upper lake of Sardis Dam. Nelson was dressed in the same clothes she was wearing on May 27. Her hands were bound together in front of her body with a phone cord. The cause of death was determined to be fresh water drowning. The injuries Nelson sustained were consistent with her being held under water. After identifying her, police obtained a description of her vehicle from the University of Mississippi Police Department. Nelson’s vehicle was found at another apartment complex adjacent to the complex where she resided. It had been towed upon the request of the apartment manager. Investigators determined that soil found inside Nelson’s vehicle and on its tires was consistent with the location at Sardis Lake where her body was found. The vehicle was unlocked and the keys were in the ignition.
¶ 6. Investigators also determined that a struggle had taken place in Nelson’s apartment. A belt and tape were found around a sheet on Nelson’s bed that indicated someone had been bound. The door of the apartment was locked but a window screen was pushed in and lying on the floor of Nelson’s bedroom. By the time of trial, laboratory results had been obtained indicating that Smith’s DNA was in semen found on the bed in Nelson’s apartment, and his fingerprints were on the tape found on her bed.
¶ 7. On May 31, 2004, Smith was detained for questioning. Smith was pulled over driving a Malibu that was owned by Smith’s girlfriend. Smith regularly used this vehicle. Smith often resided with his girlfriend in her apartment, adjacent to the apartments where Nelson lived. At other times, Smith resided in the same apartment complex as Nelson. Nelson’s vehicle was abandoned in the same complex where Smith’s girlfriend lived. Evidence collected from the Malibu and pre *981 sented at trial included a compact disk case and a book that belonged to the victim. A knife was found on the floor between the door panel and the driver’s seat. This knife was admitted into evidence over defense objection. Smith testified that he kept the knife in the vehicle.
¶ 8. After a jury trial, Smith was found guilty of capital murder and sentenced to life in prison without the possibility of parole. His appeal has been deflected to this Court.
DISCUSSION
¶ 9. Smith argues that the trial court erred in allowing a knife to be admitted into evidence. His contention is that the knife is irrelevant because it was never connected to Nelson’s abduction and murder. He cites two precedents that he argues require reversal.
¶ 10. The first opinion that Smith relies upon has been withdrawn by this Court and a modified opinion substituted when we granted the State’s motion for rehearing. Fuqua v. State, No. 2004-KA-00491-COA at (111), 938 So.2d 277, 2006 WL 540549 (Miss.Ct.App. Mar. 7, 2006) (withdrawing Fuqua v. State, No. 2004-KA-00491-COA (Miss.Ct.App. Sept. 13, 2005)). In our final opinion, this Court held that a shank — a kind of amateurishly-made knife — found under a couch at a crime scene may have been properly admitted into evidence. That was true even though there was no evidence that the shank had been used in the crime. However, even if there was insufficient probative value to that knife and it should have been excluded from evidence, the error was harmless. Fuqua, at (¶¶ 16-17), 938 So.2d at 282 (Mar. 7, 2006). The Fuqua opinion as modified on rehearing is of no assistance to Smith. - Indeed, as we will discuss below, we follow that same reasoning to affirm Smith’s conviction regardless of whether the.knife in his case should have been admitted into evidence.
¶ 11. The second case Smith relies on dealt with excluding certain pictures. Wade v. State, 583 So.2d 965 (Miss.1991). The factual issue was whether Wade had shown specific pornographic pictures to children. Id. at 967. There was conflicting testimony of whether the children were shown a book of nude pictures, but there was no credible evidence that the children had been shown the different pictures that were in a bag. Id. The bag of pictures should not have been introduced into evidence because they had no probative value on any issue in the case. The Court held that these pictures were highly inflammatory and prejudiced the defendant. Reversal occurred. Id. Whether the knife in Smith’s car, even if not admissible, was such an inflammatory piece of evidence as to require reversal is the issue that ultimately resolves this appeal.
¶ 12. The State contends that the trial court did not abuse its discretion in admitting the knife. The State relies on a precedent that allowed burglary tools to be admitted when the trial court found that the tools were close enough to the scene of a burglary in time and place to have evi-dentiary value. Wilkins v. State, 264 So.2d 411, 414 (Miss.1972). The Supreme Court also stated that “objects used or useful in the commission of a crime” are permissible in determining the intent of the defendant. Id. at 413. In Wilkins, a defendant was apprehended on the scene of a burglary where a hole had been cut into a roof. Id. An axe and bag of tools were found within 150 feet of the building. Id. .
¶ 13. In Smith’s prosecution, the trial court reasoned that the knife had probative value because the very nature of the charge against Smith involved “inveigling or restraining.’.’ Since the knife could *982 have been used and would have been useful in committing the crime, it had sufficient relevance to be introduced into evidence.
¶ 14. Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. Even if a trial judge determines that evidence has probative value, the evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.... ” M.R.E. 403.
¶ 15. Here, there were no injuries consistent with those inflicted by a knife. Nelson had a small scrape or abrasion on her face about one-half inch in length; the State does not argue that this was the kind of injury caused by a knife. The knife, to have relevance, needs to have evidentiary value on the question of whether Smith was more or less likely to have kidnaped or murdered Nelson.
¶ 16. The admissibility of evidence is within the discretion of the trial judge. Regardless of whether the knife was admissible or not, reversal occurs only if the trial judge committed an abuse of discretion and that abuse significantly prejudiced Smith. Flora v. State, 925 So.2d 797, 821 (Miss.2006). For a new trial, the error in admitting the knife must be so great that no doubt remains that Smith was prejudiced. Hammons v. State, 918 So.2d 62, 65 (Miss.2005). We agree with Smith that the probative value of the knife is minimal and added little to the case.
¶ 17. Instead of delving into the legal and factual issues that would need to be resolved in determining whether this knife was admissible evidence, we find a clearer result to arise from the nature of this evidence. Even when evidence is erroneously admitted, there is no right to reversal unless prejudice to the accused resulted. A defendant is not entitled to a perfect trial, only a fair one.
¶ 18. The knife itself was not per se inflammatory. It was not especially dangerous in appearance nor was its admission so volatile for other reasons as to stir the jurors’ emotions. Since there was no evidence that a knife was used on the victim, and defense counsel had adequate opportunity to emphasize that fact (though neither party asked for the arguments to be transcribed and they are not part of the record), there is very little incriminating about the knife. The most the State could have argued was that Smith might have been used this knife to intimidate Nelson. The defense with equal plausibility could have argued that nothing indicates that anyone used a knife and the State was simply speculating. There were many other ways by which Smith or some other perpetrator could have forced Nelson into complying with his demands. Indeed, Smith could have committed the crime but without the knife. That fact makes the knife both less relevant and less prejudicial.
¶ 19. In a prosecution in which a flashlight may have improperly been admitted as it may not have been the flashlight used to strike the victim, the Supreme Court noted that the flashlight was irrelevant to the actual charge, but that errors in admission of evidence were harmless where “the same result would have been reached had they not existed.” Burnside v. State, 882 So.2d 212, 216 (Miss.2004) (quoting Lancaster v. State, 200 So. 721, 722 (Miss.1941)).
¶ 20. The evidence against Smith largely arose from what was at Nelson’s apartment and what was found belonging to Nelson within Smith’s car. Here, the *983 knife was the least of the incriminating evidence against Smith and inconsequential to his conviction. Smith’s fingerprints were on the sticky side of tape found on Nelson’s bed. Nelson screamed to the other tenant that she had just been raped and Smith’s semen was found on Nelson’s bed. Smith had no reasonable explanation of his location at the time of the crime.
¶ 21. We find that the same result would have occurred had the knife not been admitted into evidence. Consequently, whether it was properly admitted or not need not be decided.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.